NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| DENISE WILLIAMS,<br><br>*Plaintiff,*<br><br>v.<br><br>TOWNSHIP OF CHERRY HILL, *et al.*,<br><br>*Defendants*. | HONORABLE KAREN M. WILLIAMS<br><br>No. 26-893 (KMW-EAH)<br><br><br>**MEMORANDUM OPINION** |

**WILLIAMS, District Judge.**

**THIS MATTER** comes before the Court by way of Defendant Township of Cherry Hill's ("Cherry Hill") Motion to Dismiss (Dkt. No. 9) the Amended Complaint (Dkt. No. 10) and Defendant C&E Tax Lien Fund I, L.L.C.'s ("C&E," collectively with Cherry Hill, "Moving Defendants") Motion to Dismiss[1] (Dkt. No. 18) the Amended Complaint.[2] Plaintiff Denise Williams ("Plaintiff") opposes both motions. (Dkt. Nos. 20, 21.) The Court has reviewed the parties' submissions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1.

For the reasons that follow, Moving Defendants' Motions to Dismiss (Dkt. Nos. 9, 18) are **GRANTED** and Plaintiff's Amended Complaint (Dkt. No. 10) is **DISMISSED with prejudice**.

---

[1] C&E, improperly plead as Christiana T. C/F CE1/Firstrust Bank, previously filed a Motion to Dismiss (Dkt. No. 7) for lack of service, which it thereafter withdrew upon signing a waiver of service (Dkt. No. 16). Accordingly, the Court will **DENY** C&E's initial Motion to Dismiss for lack of service (Dkt. No. 7) as moot.

[2] Defendant Firstrust Bank also filed a Motion to Dismiss (Dkt. No. 8). In response, Plaintiff filed her Amended Complaint (Dkt. No. 10), which removed all references and claims against Firsttrust Bank. Accordingly, the Court will **DENY** Firstrust's motion as moot.

## I.    BACKGROUND

The following facts are drawn from the Amended Complaint and documents integral to it. For purposes of the pending motions, the Court accepts Plaintiff's well-pleaded factual allegations as true but need not accept legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Plaintiff owns real property located at 1138 Winding Drive in Cherry Hill, New Jersey. (Am. Compl. ¶ 4.) Cherry Hill is the municipality in which the property is located, and C&E is the entity that purchased the tax sale certificate issued following the June 28, 2023 tax sale. (*Id.* ¶¶ 5-6, 45-46.)

Although the Amended Complaint recounts numerous disputes between Plaintiff and Cherry Hill dating back to 2009 regarding Plaintiff's efforts to construct a residence on the property, Cherry Hill's code enforcement activities, and the eventual demolition of the unfinished structure in January 2023, those allegations are the subject of separate litigation pending before this Court and are relevant here only insofar as they provide context for the subsequent tax sale. (*See* Am. Compl. ¶¶ 7-41); *Williams v. Township of Cherry Hill*, No. 1:23-cv-01946 (D.N.J.).

Following the demolition, Plaintiff alleges that she received a "Final Delinquent Notice," dated May 11, 2023, advising that she was required to pay $187,582.11 to avoid a tax sale. According to the Amended Complaint, that amount included approximately $170,000 in demolition-related "special charges" assessed by Cherry Hill. (Am. Compl. ¶ 42.) Plaintiff further alleges that, on June 13, 2023, Cherry Hill mailed her a "Tax Sale Notice" advising that the property would be sold at a tax sale on June 28, 2023 unless she paid $191,366.64 before June 27, 2023. (*Id.* ¶ 44.) The tax sale proceeded as scheduled on June 28, 2023, and C&E purchased the

2

tax sale certificate for $191,366.64. The certificate was subsequently recorded on August 17, 2023. (*Id.* ¶¶ 45-46.)

Plaintiff further alleges that Cherry Hill knew USAlliance Federal Credit Union held a recorded mortgage on the property before the tax sale. Specifically, Plaintiff alleges that, during discovery conducted in Plaintiff's separate federal litigation against Cherry Hill, counsel for Cherry Hill obtained a copy of the recorded mortgage and deposed a representative of USAlliance concerning its mortgage interest. (*Id.* ¶¶ 48-49.) Plaintiff alleges that, despite this knowledge, Cherry Hill failed to provide USAlliance with notice of either the January 2023 demolition or the June 2023 tax sale. (*Id.*) Plaintiff asserts that Cherry Hill's failure to notify USAlliance violated N.J.S.A. § 54:5-26 and the Due Process Clause as interpreted in *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983), thereby rendering the demolition and tax sale "legally void." (*Id.* ¶¶ 49-50.)

Plaintiff commenced this action in the Superior Court of New Jersey on August 15, 2025. Cherry Hill removed the matter to this Court on January 28, 2026. Plaintiff thereafter filed the operative Amended Complaint, substituting C&E for the previously named tax certificate holder. The Amended Complaint seeks a declaration that the June 28, 2023 tax sale is void, an injunction prohibiting foreclosure based upon the tax sale certificate, and related equitable relief. (*Id.* ¶ 52.)

## II.    PROCEDURAL HISTORY

Cherry Hill moved to dismiss the original Complaint, arguing that Plaintiff lacks Article III standing because the only constitutional injury alleged concerns Cherry Hill's purported failure to notify Plaintiff's mortgagee rather than Plaintiff herself. (Dkt. No. 9.) Cherry Hill further argues that New Jersey's Tax Sale Law imposed no obligation upon Cherry Hill to notify lienholders before conducting the tax sale and that Plaintiff therefore fails to state a claim. (*Id.*)

3

After removal, Plaintiff filed the Amended Complaint, which substituted C&E as the holder of the tax sale certificate but otherwise retained the same substantive theory of relief. (*Compare* Compl. *with* Am. Compl. ¶¶ 45-52, Dkt. Nos. 1, 10.) Cherry Hill thereafter renewed its motion to dismiss, and C&E separately moved to dismiss the Amended Complaint. C&E argues that Plaintiff's claims are barred by the applicable statute of limitations, that Plaintiff lacks Article III standing to assert the rights of her mortgagee, and that the Amended Complaint otherwise fails to state a claim upon which relief may be granted. (Dkt. No. 18-3.)

Plaintiff opposes both motions. She argues that she possesses standing because the alleged failure to notify USAlliance forms only part of a broader constitutional violation affecting her own property interests, that her claims are timely under N.J.S.A. § 54:5-82, and that *Mennonite*, *Tyler v. Hennepin County*, 598 U.S. 631 (2023), and *257-261 20th Ave. Realty, LLC v. Roberto*, 259 N.J. 417 (2025), support invalidation of the tax sale. (Dkt. Nos. 20, 21.)

The motions are now ripe for disposition.

### III.    LEGAL STANDARD

#### a.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for lack of subject matter jurisdiction. "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007); *see also Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (holding Article III standing is a jurisdictional prerequisite.).

A Rule 12(b)(1) motion may present either a facial or factual challenge to the Court's subject matter jurisdiction. *Constitution Party*, 757 F.3d at 357-58; *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial challenge contests the sufficiency of the pleadings and requires

4

the court to consider only the allegations of the complaint and documents referenced therein, accepting the plaintiff's well-pleaded factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Constitution Party*, 757 F.3d at 358; *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). By contrast, a factual challenge disputes the existence of subject matter jurisdiction in fact, permitting the court to consider evidence outside the pleadings and weigh the jurisdictional facts without presuming the truth of the complaint's allegations. *Davis*, 824 F.3d at 346.

The motions presently before the Court raise a facial challenge to Plaintiff's standing because Defendants contend that, even accepting the allegations of the Amended Complaint as true, Plaintiff has failed to allege an injury sufficient to satisfy Article III. Accordingly, the Court accepts Plaintiff's well-pleaded factual allegations as true for purposes of the standing inquiry. *See Constitution Party*, 757 F.3d at 358.

Because standing is an indispensable component of the Court's subject matter jurisdiction, the Court must resolve any challenge to standing before reaching the merits of Plaintiff's claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

### b. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A claim is facially plausible when the pleaded facts permit the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678.

Although courts must accept well-pleaded factual allegations as true, they need not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements" is insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### c.   Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has instructed that, in civil rights cases, a district court ordinarily should permit amendment before dismissing a complaint for failure to state a claim unless amendment would be inequitable or futile. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Amendment is futile where the amended complaint would fail to state a claim upon which relief could be granted. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Thus, leave to amend may properly be denied where the deficiencies in a complaint arise from legal barriers that cannot be cured through additional factual allegations. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

### IV.    DISCUSSION

### a.   Plaintiff Lacks Article III Standing

Article III standing is a threshold jurisdictional requirement, derived from the "case" or "controversy" language of Article III of the Constitution. *Susan B. Anthony List*, 573 U.S. at 157.

6

Because standing is jurisdictional, it must be established before the Court may reach the merits of Plaintiff's claims. *Steel Co.*, 523 U.S. at 94-95.

To establish Article III standing, a plaintiff bears the burden of demonstrating "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)) (cleaned up); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To satisfy the injury-in-fact requirement, the plaintiff must allege an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). The party invoking federal jurisdiction bears the burden of establishing each element of standing. *Lujan*, 504 U.S. at 561.

Here, Plaintiff fails to allege that she herself suffered the constitutional injury upon which this action is premised. Instead, the Amended Complaint expressly alleges that the constitutional defect was Cherry Hill's failure to provide notice of the demolition and tax sale to Plaintiff's mortgagee, USAlliance Federal Credit Union. Specifically, Plaintiff alleges that Cherry Hill knew of USAlliance's recorded mortgage interest, failed to notify USAlliance of the demolition and tax sale, and that Cherry Hill's "failure to notify USAlliance of the Tax Sale violated N.J.S.A. 54:5-26 and the due process requirements set forth in *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983)." (Am. Compl. ¶¶ 48-50.) Plaintiff further alleges that this purported failure "renders the demolition and tax sale legally void." (*Id.* ¶ 49.)

Conspicuously absent from the Amended Complaint, however, is any allegation that Plaintiff herself was deprived of constitutionally adequate notice of the tax sale. To the contrary, Plaintiff affirmatively alleges that she received a "Final Delinquent Notice" dated May 11, 2023

advising her that the property would be sold unless she satisfied the outstanding municipal charges, and that Cherry Hill thereafter mailed her a "Tax Sale Notice" dated June 13, 2023 advising that the tax sale would occur on June 28, 2023 unless she paid the amount due before June 27, 2023. (Am. Compl. ¶¶ 42, 44.)

Those allegations foreclose Plaintiff's contention that the constitutional injury alleged in the Amended Complaint was one suffered by her. Indeed, Plaintiff does not allege that she lacked actual notice of the impending tax sale, that she was unaware of the amount claimed due, or that Cherry Hill concealed the sale from her. The only procedural deficiency identified in the pleading concerns Cherry Hill's alleged failure to notify USAlliance.

Because Plaintiff alleges no concrete deprivation of her own constitutional rights arising from the notice provided before the tax sale, she has failed to plead the injury-in-fact necessary to invoke this Court's jurisdiction. *See Spokeo*, 578 U.S. at 338-39; *Lujan*, 504 U.S. at 560-61. Accordingly, the Amended Complaint must be dismissed for lack of Article III standing.

### b.  Plaintiff Cannot Assert the Constitutional Rights of USAlliance

Even if Plaintiff could otherwise establish Article III standing, the Amended Complaint would independently fail because the constitutional injury she identifies belongs, if at all, to a third party. It is a well-established principle that a litigant "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *see also Powers v. Ohio*, 499 U.S. 400, 410 (1991). This prudential limitation reflects the general rule that constitutional rights are personal and ordinarily may not be asserted vicariously. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

8

The constitutional theory pleaded here belongs exclusively to USAlliance. Plaintiff alleges that USAlliance held a recorded mortgage on the Property, that Cherry Hill knew of that mortgage interest before the tax sale, and that Cherry Hill nevertheless failed to provide USAlliance with notice before conducting the sale. (Am. Compl. ¶¶ 48-50.) Whether those allegations ultimately establish a constitutional violation under *Mennonite* is a question the Court need not decide. The threshold problem is that the alleged deprivation concerns the mortgagee's entitlement to notice—not Plaintiff's. The Due Process Clause protects persons whose property interests are threatened by governmental action, and *Mennonite* itself addressed the constitutional notice owed to a mortgagee whose recorded security interest was affected by a tax sale. *See Mennonite Bd. of Missions*, 462 U.S. at 798-800. Nothing in *Mennonite* authorizes a property owner to litigate the constitutional rights of the mortgagee in the mortgagee's absence. Nor does Plaintiff allege any facts bringing this case within the narrow exceptions permitting third-party standing. She does not allege that USAlliance faces any obstacle preventing it from asserting its own rights, nor does she identify any recognized basis upon which she may litigate constitutional claims on its behalf. *See Kowalski*, 543 U.S. at 129; *Powers*, 499 U.S. at 410.

Accordingly, because Plaintiff seeks to invalidate the tax sale based upon an alleged deprivation of notice owed to USAlliance rather than to herself, the Amended Complaint fails to present a claim that Plaintiff is entitled to pursue in federal court. This provides an independent basis for dismissal.

### c.   Plaintiff Cannot Amend Her Complaint Through Opposition Briefing

Plaintiff's opposition briefs attempt to recast the theory asserted in the Amended Complaint. Specifically, Plaintiff now contends that she—not merely her mortgagee—was

9

deprived of due process because she allegedly "never was provided an opportunity to be heard" before the tax sale. (Pl.'s Opp. to Cherry Hill MTD at 3-4; Pl.'s Opp. to C&E MTD at 4.)

The Court cannot consider this newly asserted theory. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (declining to consider a theory first raised in briefing because the complaint "may not be amended by the briefs"). The operative pleading contains no allegation that Plaintiff herself was denied notice or deprived of an opportunity to be heard before the tax sale. The Amended Complaint affirmatively alleges that Plaintiff received both Cherry Hill's May 11, 2023 Final Delinquent Notice and its June 13, 2023 Tax Sale Notice before the June 28, 2023 sale. (Am. Compl. ¶¶ 42, 44.) Nor does the Amended Complaint allege that the procedures afforded Plaintiff before the tax sale were constitutionally inadequate. Instead, every constitutional allegation centers on Cherry Hill's purported failure to provide notice to USAlliance. (*Id.* ¶¶ 48-50.)

Plaintiff's newly asserted contention that she lacked an opportunity to be heard therefore constitutes an entirely new procedural due process theory that appears nowhere in the Amended Complaint. Because Plaintiff may not amend her pleading through arguments advanced in opposition to dismissal, the Court confines its analysis to the allegations actually pleaded.

### d.  The Amended Complaint Otherwise Fails to State a Claim

Although the Court concludes that Plaintiff lacks Article III standing, the Court notes that dismissal would also be warranted under Rule 12(b)(6) because the Amended Complaint otherwise fails to state a plausible claim for relief.

As previously noted, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face" to survive dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678

10

(quoting *Bell Atl. Corp.*, 550 U.S. at 570). Although the Court accepts well-pleaded factual allegations as true, it need not accept legal conclusions couched as factual allegations or unsupported legal assertions. *Id.* at 678-79.

The Amended Complaint's sole legal theory is that the June 28, 2023 tax sale is void because Cherry Hill failed to notify Plaintiff's mortgagee before conducting the sale. (Am. Compl. ¶¶ 49-50.) As discussed above, Plaintiff cannot obtain relief based upon the alleged violation of a third party's constitutional rights. Moreover, the factual allegations pleaded by Plaintiff undermine any inference that she herself was deprived of constitutionally adequate notice. Plaintiff affirmatively alleges that she received written notice advising her of the outstanding delinquency, the amount required to prevent the tax sale, and the date on which the sale would occur if payment were not made. (*Id*. ¶¶ 42, 44.)

Although Plaintiff characterizes the demolition-related charges as unlawful and repeatedly asserts that the tax sale was therefore "fraudulent," those assertions amount to legal conclusions rather than independently actionable factual allegations supporting the claim asserted in this case. *See Iqbal*, 556 U.S. at 678. Indeed, much of the Amended Complaint is devoted to recounting Plaintiff's longstanding disputes with Cherry Hill concerning construction permits, code enforcement proceedings, demolition orders, and related litigation dating back more than a decade. (*See* Am. Compl. ¶¶ 7-41.) Those allegations may be relevant to Plaintiff's separate litigation challenging the demolition of her unfinished residence, but they do not plausibly establish that the June 28, 2023 tax sale itself violated Plaintiff's constitutional or statutory rights.

Accordingly, even accepting the factual allegations as true, the Amended Complaint fails to allege facts that plausibly entitle Plaintiff to the declaratory and injunctive relief she seeks.

11

### e.  *Roberto* and *Tyler* Do Not Salvage Plaintiff's Claims

Plaintiff relies on *Tyler v. Hennepin County*, 598 U.S. 631 (2023), and the New Jersey Supreme Court's subsequent decision in *257-261 20th Ave. Realty, LLC v. Roberto*, 259 N.J. 417 (2025), contending those decisions demonstrate that the June 28, 2023 tax sale was constitutionally infirm. (Pl.'s Opp. to Cherry Hill MTD at 3-4; Pl.'s Opp. to C&E MTD at 4.) Plaintiff's reliance on those decisions is misplaced.

In *Tyler*, the Supreme Court held that a governmental entity effects a taking when it retains the surplus equity remaining after satisfying a delinquent taxpayer's debt following a tax foreclosure. 598 U.S. at 644-48. Building upon *Tyler*, the New Jersey Supreme Court held in *Roberto* that New Jersey's pre-2024 Tax Sale Law violated the Takings Clause to the extent it permitted the forfeiture of a property owner's surplus equity without just compensation. 259 N.J. at 427-29. Neither decision addressed the issue presented here.

Plaintiff does not allege that Defendants have retained surplus equity following a completed tax foreclosure, nor does she assert a Takings Clause claim arising from the extinguishment of her equity interest. Rather, the Amended Complaint challenges the validity of the tax sale itself based upon Cherry Hill's alleged failure to notify Plaintiff's mortgagee before the tax sale certificate was issued. (Am. Compl. ¶¶ 48-50.) Neither *Tyler* nor *Roberto* addressed whether a property owner may invalidate a tax sale based upon an alleged deprivation of notice owed to a mortgagee, and neither decision supports the proposition that a property owner may assert a mortgagee's constitutional rights.

Indeed, *Roberto* reaffirmed the traditional structure of New Jersey's Tax Sale Law, explaining that a tax sale transfers the municipality's tax lien to the certificate holder while the property owner retains legal title and a statutory right of redemption unless and until a foreclosure

judgment is entered. 259 N.J. at 433-36 (citing *In re Princeton Office Park, L.P.*, 218 N.J. 52, 62-64 (2014)). Those principles are not inconsistent with the Court's conclusion here.

Accordingly, neither *Tyler* nor *Roberto* alters the jurisdictional deficiencies discussed above or otherwise supplies Plaintiff with a viable cause of action.

### f.   Leave to Amend Will Be Denied as Futile

Ordinarily, when a complaint is dismissed under Rule 12(b)(6), a district court should grant leave to amend unless amendment would be inequitable or futile. *Phillips*, 515 F.3d at 245; *Grayson*, 293 F.3d at 108. Amendment is futile where the amended complaint "would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434; *see also Shane*, 213 F.3d at 115. The Court concludes that amendment would be futile here.

Plaintiff has already amended her pleading once after removal, yet the operative Amended Complaint continues to premise this action on Cherry Hill's alleged failure to provide notice of the tax sale to Plaintiff's mortgagee, USAlliance. (*See* Am. Compl. ¶¶ 48-50.) As discussed above, that alleged constitutional injury belongs, if at all, to the mortgagee rather than to Plaintiff herself. Plaintiff therefore lacks standing to pursue the theory actually pleaded.

Moreover, Plaintiff affirmatively alleges that she personally received both Cherry Hill's May 11, 2023 Final Delinquent Notice and the June 13, 2023 Tax Sale Notice before the June 28, 2023 tax sale. (Am. Compl. ¶¶ 42, 44.) Those allegations are not mere pleading omissions that could be cured through more detailed factual averments; they are affirmative factual allegations that undercut Plaintiff's assertion that she was deprived of constitutionally adequate notice.

The Court further notes that, after Defendants identified these deficiencies in their motions to dismiss, Plaintiff did not seek leave to amend the Amended Complaint. Instead, she attempted to advance a new procedural due process theory in her opposition briefs by asserting, for the first

13

time, that she "never was provided an opportunity to be heard" before the tax sale. As explained above, a plaintiff may not amend an operative complaint through arguments contained in briefing. *Zimmerman*, 836 F.2d at 181; *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007). More importantly, Plaintiff has never identified additional facts that would cure the jurisdictional defects discussed herein or otherwise state a plausible claim for relief.

Furthermore, the Court is mindful that Plaintiff has filed the Amended Complaint through counsel and has already exercised her opportunity to amend once as a matter of course after removal. (*See* Dkt. No. 10.) The deficiencies identified in this Opinion are not the product of inartful pleading but instead arise from the legal theory Plaintiff elected to pursue. Under these circumstances, permitting yet another amendment would serve only to prolong litigation without curing the fundamental defects in the operative pleading. *See Shane*, 213 F.3d at 115; *Burlington Coat Factory*, 114 F.3d at 1434. Indeed, the progression from the original Complaint to the Amended Complaint—and then to the theories advanced for the first time in Plaintiff's opposition briefs—confirms that Plaintiff has already had ample opportunity to present her best case. The Court is satisfied that further amendment would not cure the jurisdictional and substantive deficiencies identified above.

Accordingly, because further amendment would be futile, the Amended Complaint will be dismissed with prejudice.

14

## V.    CONCLUSION[3]

For all the foregoing reasons, Moving Defendants' Motions to Dismiss (Dkt. Nos. 9, 18) are **GRANTED**; and Plaintiff's Amended Complaint (Dkt. No. 10) is **DISMISSED with prejudice**.

Dated: July 27, 2026

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff's counsel, Robert H. Brembry, Esq. and Robert T. Vance, Esq., have filed a Fourth Motion to Withdraw as Plaintiff's Counsel (Dkt. No. 30). Notwithstanding that Plaintiff has filed other correspondences to the Court *pro se*, Plaintiff has not opposed the motion to withdraw. The Court, noting the reasons for withdrawal stem from disagreement as to strategy rather than financial considerations; and the Court further noting that Defendants do not oppose the motion; and the Court finding that granting the motion will not substantially delay resolution of the case in light of the Court's dismissal of this matter with prejudice; and the Court finding that the interests of justice will be advanced by permitting counsel to withdraw in the circumstances presented here; the Court will **GRANT** counsels' motion to withdraw. *See McDaniel v. Daiichi Sankyo, Inc.*, 343 F. Supp. 3d 427, 430 (D.N.J. 2018).